AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
AUG 2 1 2025
MITCHELL R. ELFERS
CLERK OF COURT

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*
Approximately $117,000 in U.S. Currency

Case No. 25-1397 MR

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of New Mexico is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) *(describe the property)*:

Approximately $117,000 in U.S. Currency recovered by Las Cruces Police Department/Metro Narcotics on July 23, 2025, and currently in Law Enforcement storage in New Mexico.

The application is based on these facts:
Refer to the attached Affidavit in Support of Application for Seizure by FBI SA Chafin Cox

☑ Continued on the attached sheet.

*Applicant's signature*

Chafin Cox, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.
by phone. JHR

Date: August 21, 2025

*Judge's signature*

City and state: Las Cruces, New Mexico

Jerry H. Ritter, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Chafin Cox, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since 2018. I am currently assigned to the FBI's Albuquerque Division, Las Cruces Resident Agency where I am assigned to investigate criminal matters. By virtue of my employment with the FBI, I am authorized to conduct investigations into violations of federal laws, to include bank robberies, the trafficking of illegal narcotics, the illegal possession of firearms, and various federal criminal violations. My law enforcement training and experience includes, but is not limited to, conducting surveillance; interviewing subjects, victims and witnesses; writing affidavits for and executing search warrants; issuing administrative subpoenas; analyzing phone records, and financial records; as well as analyzing data derived from the use of pen registers, trap and trace devices; and supporting Title III investigations.

### PROPERTY TO BE SEIZED

2. This Affidavit is in support of an Application for a Seizure Warrant for:

   a. Approximately $117,000 in U.S. currency

All of property listed above (hereinafter referred to as "Subject Property") is currently in law enforcement evidence.

### STATEMENT OF PROBABLE CAUSE

3. On July 23, 2025, a Las Cruces Police Department (LCPD) K-9 interdiction Officer, who is also a FBI Task Force Officer (TFO), was conducting traffic enforcement on

Highway 54, in Otero County, NM. The TFO noticed a Grey Honda Pilot SUV commit multiple traffic violations. The TFO engaged his emergency lights and attempted to conduct a traffic stop of the vehicle. The driver of the Honda Pilot was slow to stop but eventually stopped for the TFO. The TFO approached the vehicle and began conversing with the driver, later identified as Jesus Guerrero Reyes, about the reason for the stop. Reyes admitted to the traffic violations but was unable to provide the TFO with a driver's license, or insurance. Reyes told the TFO that the vehicle was his and that it was registered to him. Reyes provided immigration documentation to the TFO, based on this documentation the TFO was able to determine that Reyes was not a U.S. Citizen but had legal status to be in the United States. During his interaction with Reyes, the TFO noticed several indicators, based on the TFO's training and experience as an interdiction officer, that Reyes was being deceptive and possibly engaged in illegal activity. The TFO completed the traffic stop and told Reyes that he was free to leave. While Reyes was walking back to his vehicle the TFO engaged with Reyes in a consensual conversation. The TFO asked Reyes if he didn't mind if he asked a few more questions. Reyes began to give conflicting answers about his itinerary to what he had previously told the TFO. The TFO asked Reyes if he was transporting illegal drugs, firearms, or ammunition, to which Reyes said no. The TFO then asked Reyes if he was transporting large amounts of U.S. currency. Reyes hesitated and shook his head no, but did not verbally say no. At this point the TFO believed that Reyes was potentially in the process of smuggling bulk cash/illegal proceeds from the U.S. across the border into Mexico.

4. The TFO obtained written and verbal consent to search the vehicle. Investigators recovered approximately $117,000 in U.S. Currency from a hidden aftermarket compartment located in the front right wheel well of the vehicle. The TFO observed that Reyes did not appear

to be particularly concerned while investigators were searching the vehicle, until they began to investigate the front right wheel well. The TFO read Reyes his Miranda rights, and Reyes almost immediately asked for a lawyer.

5. During the traffic stop and consensual encounter, Reyes had previously told the TFO that he had been visiting his girlfriend in Colorado. He later told the TFO that he had been looking for a job in Colorado. When asked how long he had been in Colorado, Reyes gave the TFO conflicting answers, but at one point said 3 days. When the vehicle crossing history was checked, it was determined that the vehicle had crossed into the United States on July 22, 2025, only a day prior to the traffic stop. Reyes' crossing history was checked and it was determined that Reyes regularly crossed into the U.S. from Mexico and would return back to Mexico only two to three days later.

6. Based on my training and experience I know that those engaged in illegal activity often use individuals with legal status in the U.S. to transport illegal proceeds, in the form of bulk U.S. currency, from the U.S. into Mexico, and that they often conceal the bulk cash in hidden aftermarket compartments to evade law enforcement. I also know that individuals using hidden aftermarket compartments to conceal bulk U.S. currency do not intend to claim the bulk U.S. currency when they cross the international border.

7. Based on the facts and circumstances contained herein, I believe that there is probable cause to establish the Subject Property represents violations of 31 U.S.C. § 5332(a)(1) of bulk cash smuggling. As such, I believe the Subject Property may be seized and subject to forfeiture by the United States Department of Justice pursuant to 21 U.S.C. § 881(a)(6). This affidavit was reviewed by Assistant United States Attorney Maria Armijo

Respectfully submitted,

_____
Chafin Cox
Special Agent
Federal Bureau of Investigation

Electronically submitted and telephonically
sworn to before me on this 21st day of August, 2025:

_____
Jerry H. Ritter
United States Magistrate Judge